Michael D. CULLENS v. STATE of Arkansas

5731                                    482 S.W. 2d 95

Opinion delivered July 3, 1972

*Stephen K. Wood,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Jimmy D. Patton,* Asst. Atty. Gen., for appellee.

J. Fred Jones, Justice. This is an appeal by Michael D. Cullens from an order of the Crittenden County Circuit Court denying his petition for post-conviction relief under our Criminal Procedure Rule No. 1.

On February 2, 1971, Cullens was charged on information filed by the prosecuting attorney in Crittenden County, Arkansas, with the crimes of burglary and grand larceny, and possession of stolen property. The state's attorney also filed petitions for the revocation of five previously suspended sentences. On September 20, 1971, the appellant entered pleas of guilty on four counts of possession of stolen property and to the charge of burglary and grand larceny. Through the process of plea bargaining, one of the five petitions for revocation of the suspended sentences was granted and the state withdrew its petitions to revoke in the remaining four cases. Appellant was sentenced to 10 years in the penitentiary on each of the possession charges and on the revocation of suspended sentence with the sentences to run concurrently. He was also sentenced to a term of 21 years on the burglary and grand larceny charges, but these sentences were suspended during good behavior.

Subsequent to the appellant's pleas and sentencing, he filed a motion for post-conviction relief pursuant to our Criminal Procedure Rule No. 1; and on January 18, 1972, the trial court, after examination of the appellant's motion and the transcript of the proceedings at the time of accepting the pleas of guilty, denied appellant's motion for post-conviction relief.

No hearing was had on the motion for post-conviction relief and it appears that the trial court disposed of the appellant's motion under subsection (c) of our Criminal Procedure Rule No. 1, which reads as follows:

"If the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files or records that are relied upon to sustain the court's findings." (Emphasis added).

When the guilty pleas were entered and accepted, the trial court did a commendable job in protecting his record against subsequent attack as to advising the appellant of his rights and of the possible penalties involved in the event he should waive his rights to a jury trial. The trial court addressed the appellant with the following questions and received the following answers:

"THE COURT: You understand what these charges are and what the penalties are, ranging anywhere from one to twenty-one years and two to twenty-one years in each of the various offenses?

DEFENDANT CULLENS: Yes, sir.

THE COURT: Other than the negotiated pleas, were there any other promises or inducement made to get you to plead guilty?

DEFENDANT CULLENS: No, sir.

THE COURT: Were there any threats made against you, coercion, force or threats of a longer sentence made if you did not enter your pleas as shown here?

DEFENDANT CULLENS: No, sir.

THE COURT: And you are entering your pleas of guilty to these cases because you are in fact guilty, as I understand it?

DEFENDANT CULLENS: Yes, sir."

Of course, in his "Motion to Vacate Sentence Under Criminal Procedure Rule No. 1," the appellant now alleges matters that he was not questioned on at the time of his pleas of guilty were accepted after setting out that his pleas of guilty were entirely voluntary and in strict violation of his constitutional rights under the Arkansas Constitution and the sixth, eighth and fourteenth amendments to the United States Constitution, the appellant now states as follows:

"That at the time of my initial arrest and confinement I was not represented by counsel and was not informed of any of my rights to such representation or to my right to assignment of counsel. That I was not aware of my constitutional rights to the assignment of counsel or to be represented by counsel.

That I was denied the effective assistance of counsel because my total contact with my retained attorney, prior to my plea of guilty, consisted of a mere ten-minute interview, and my retained attorney knew little, if anything, about my case pending in the Crittenden County Circuit Court. I had several possibilities of defense but my attorney failed to suggest or explore any of them, and, therefore, denied me the effective assistance of counsel as guaranteed to me by the Sixth and Fourteenth Amendments to the United States Constitution.

That upon information and belief, the trial prosecutor and defense counsel improperly overbore me by telling me if I did not plead guilty to the aforestated crime, I would receive a more severe sentence and would further be charged and convicted as an habitual criminal.

Because of the above stated threats I was placed in

such fear I was unable to adequately confer and consult with my retained counsel, due to the undue pressure brought to bear upon me by the Court and counsel. There was no physical abuse but the above threats as heretofore stated was coercion invalidating my plea of guilty. I had the assistance of counsel in name only. That my retained counsel made no effort to pre-investigate my case prior to my entering a plea of guilty, to establish my innocence.

Furthermore, my court retained attorney was well aware of the fact that there was no corroborating evidence to sustain a conviction except through the co-defendant's; that there were no other witnesses including Officers, State or City, ever saw me on the day in question where I allegedly committed the crimes charged in the Bill of Information. A jury would have found me not guilty of the crimes charged. My retained counsel was aware that only a suspicion of my guilt had been raised and if the co-defendant's testimony had been eliminated from my case, and there was no other established evidence, then the corroborating evidence of the co-defendant's raised only a suspicion of my guilt and would not have been sufficient to establish my guilt."

The trial court in this case was evidently familiar with every step in the procedure when the appellant entered his pleas of guilty, and we may reasonably assume that the trial court was very familiar with the qualifications of the appellant's retained counsel in this case and was familiar enough with the overall situation at the time the pleas were accepted to feel that the appellant had obtained such advantage in his plea bargaining that the skill and effectiveness of his counsel would simply never be questioned; but the cold record as it appears before us refreshes no memories of the actual proceedings at the trial as perhaps it would do for the trial court.

The appellant contends in his motion that his total contact with his attorney prior to his pleas of guilty consisted of a mere ten minute interview, and that his attorney knew little, if anything, about his pending cases. If we could read between the lines from the overall re-

cord before us, we might easily conclude that the appellant's attorney knew a lot more about the appellant's case, as well as the inclination of Crittenden County trial juries, than the appellant gave him credit for. We, of course, are not permitted to read between the lines in the records before us and the record could have been much clearer if the trial court had also inquired of the appellant if he was satisfied with the services of his attorney. If the appellant had answered in the negative, the court could then and there ascertain wherein the difficulty lay.

The appellant now contends that the prosecuting attorney and defense counsel improperly "overbore" him by telling him that if he did not plead guilty to the charges the state had not waived, he would receive a more severe sentence and still be charged and convicted as a habitual criminal. Again the overall record would indicate that if such advice and information was conveyed to the appellant by his counsel and the prosecuting attorney, they were probably telling him the truth, but never the less he now says that because of such threats he was placed in such fear he was unable to adequately confer and consult with his retained counsel and that he was completely coerced into entering his pleas.

From the record before us, we are unable to say that it *conclusively* shows the appellant is not entitled to relief, so we conclude that the trial court should have granted the appellant a hearing on his motion to the end that we might have a record, in the event of an appeal, from which we could determine wherein the appellant was "overborne" if such was the case. See *Walker* v. *State,* 251 Ark. 182, 471 S.W. 2d 536.

Reversed and remanded with instructions to grant a hearing with the proceedings to be reported.

Reversed and remanded.

FOGLEMAN, J., not participating.

BYRD, J., dissents.